# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| SCOURTERRIOUS LOFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN STANLEY WILLIAMS; | ) | Case No. CV415-146 |
| CAPTAIN BYNUM; TRACY | ) | |
| MCINTYRE; LISA FOUNTAIN; | ) | |
| and CERT OFFICER SANTIAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Scourterrious Lofton brings this 42 U.S.C. § 1983 action against five employees of Smith State Prison ("SSP") in Glennville, Georgia. He raises a variety of constitutional claims surrounding his transfer to SSP. Doc. 1 at 7.

## I. BACKGROUND[1]

"On Nov[ember] 16, 2014, an altercation occurred . . . at Macon State Prison between a group of Bloods (known gang members) and Muslims." Doc. 1 at 5. Lofton abstained from fisticuffs, but two of his

---

[1] The Court screens Lofton's Complaint pursuant to 28 U.S.C. § 1915A to determine whether he states a cognizable claim. The facts it contains consequently are taken as true for purposes of this Order.

"Muslim brothers ran into [his] cell" to escape the melee. *Id.* During a post-fight "round-up," prison guards detained him because they found the two inmates in his cell without authorization and because he "was a known Muslim." *Id.*

After the round-up, "CERT officers -- under orders from [defendant] Tracy McIntryre . . . -- made [Lofton] submit to a strip search," and transported him to a new dorm. Doc. 1 at 5. McIntyre took Lofton's property to search it, but failed to return it until his transfer to SSP. *Id.* By that point, "a lot of [his] personal property was missing, particularly [his] electronic items." *Id.*

During the transfer, Lofton "was served with a 'disciplinary report'" for "participating in a disturbance," and "allowing two other inmates to seek safety in [his] assigned cell." Doc. 1 at 6. He later complained to an investigator at SSP, who "agreed [with Lofton] and recommended dismissal" of the report. *Id.* at 6. "[A]nother document was [then] forged to correct the discrepancy," *id.* at 7, and ensure Lofton remained a "disciplinary transfer classification." *Id.* at 6.

Upon arrival at SSP, "CERT officers, particularly [defendant] Santiago," "berated, and harassed, and humiliated" Lofton. Doc. 1 at 5.

2

Allegedly because of his disciplinary classification and "the presence of Islamic materials (prayer rug, books, Quran, etc.)," Santiago "forced [him] to submit to a malicious and degrading strip search attempting to provoke [him] in order to give [prison staff] a 'reason' to use force on [him]." *Id.* at 6. Santiago made Lofton "stand naked for a prolonged period of time," during which he ransacked Lofton's property. *Id.* He randomly broke personal, non-contraband items in an attempt to provoke Lofton, and when Lofton complained, Santiago confiscated everything. *Id.* Lofton later filed a grievance "but was not afforded any relief." *Id.*

He also complained to defendant Stanley Williams, SSP's warden, about his disciplinary report and mistreatment by the CERT team officers. Doc. 1 at 7. In response, Williams told Lofton "I run the show around here, y'all Muslims think you're smart -- let's see how smart you are when I put you over in my Tier II program." Doc. 1 at 7. That program, he says, is "designed for clinical and psychological need[s]," not for those guilty of practicing Islam. *Id.* What's more, says Lofton, the program lacks any certified medical professionals and exists solely to "goose" occupancy numbers and justify the prison's continued receipt of

3

program funding. *Id.* at 8. Lofton remains there today, in his view "based upon his religious affiliation," and without "a means of completing the program." *Id.* He claims that, prior to filing this lawsuit, "[a]ll administrative remedies have been exhausted." *Id.* at 7.

Lofton identified three claims in his Complaint: (1) that his placement in the Tier II program punitively sanctions him based solely on religious affiliation; (2) the program subjects him to cruel and unusual punishment; and (3) defendants have been deliberately indifferent to Lofton's medical needs by placing him in a program that has no certified treatment providers. Doc. 1160. Also present, though not expressly identified,[2] are claims for violation of bodily privacy, an unreasonable search, and destruction of property. All six claims are addressed in turn.

---

[2] Courts "generally 'must look beyond the labels of [filings] by pro se [plaintiffs] to interpret them under whatever statute would provide relief.' *See Means v. Alabama*, 209 F.3d 1241, 1242 (11th Cir. 2000) (concerning *pro se* inmates); *cf. Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.")." *Wilkerson v. Georgia*, 618 F. App'x 610, 611-12 (11th Cir. 2015). Simply failing to name the proper cause of action cannot forfeit a *pro se* prisoner's claim when, as here, he presents facts sufficient to allow claim identification.

That said, it is not the Court's duty to brainstorm claims for litigants or to litigate those claims on their behalf. *See, e.g., Sec'y, Fla. Dep't of Corr. v. Baker*, 406 F. App'x 416, 422 (11th Cir. 2010) ("[C]ourts may not serve as *de facto* counsel for the litigant

4

## II. ANALYSIS

### A. Religious Discrimination

Lofton cites no constitutional provision, much less the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–1, as the basis for his religious discrimination claim. Nevertheless, he presents the substantive elements of an Equal Protection claim (*i.e.*, that defendants sanctioned him, but not others, because of his religion), which the Court accordingly recognizes.[3] *See Baker*, 406 F. App'x at 422.

---

or rewrite an otherwise deficient pleading in order to sustain an action."). *Williams v. Brown*, 2009 WL 4906861 at * 2 (S.D. Ga. Oct. 20, 2009). Lofton himself must shoulder that burden.

[3] Dismissal for failure to exhaust administrative remedies is not proper at this stage. Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies before filing an action that challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail ... until such administrative remedies as are available are exhausted."). Exhaustion is a "precondition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").

Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89-91 (citation omitted). Thus, if an inmate has filed an "untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83-84; *see also*

To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and [that] (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination.").

*Muhammad v. Sapp*, 388 F. App'x 892, 899 (11th Cir. 2010).

Lofton alleges that Williams ordered his placement in the Tier II program because of his Islamic faith. *See* doc. 1 at 7. The quote he

---

*Lambert v. United States*, 198 Fed. Appx. 835, 840 (11th Cir. 2006) (proper exhaustion requires filing grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005). In Georgia, "proper exhaustion" means that prisoners are required to complete a three step grievance process, consisting of an informal grievance, a formal grievance, and an appeal, before filing suit in federal court. *Helton v. Burks*, 2012 WL 6097036 at * 2 (M.D. Ga. May 4, 2012) (citing Ga. Dep't of Corr. SOP IIB05-001 § VI).

Lofton's allegations are, at least on preliminary review, sufficient to satisfy the exhaustion requirement. He says that he filed grievances related to property destruction, but that prison officials did nothing. *See* doc. 1 at 6. He also says that he exhausted all administrative remedies, *id.*, and while he fails to attach any grievances or other documents proving that assertion, dismissal at this stage in the face of it would be improper. *See Cole v. Sec'y Dep't of Corr.*, 451 F. App'x 827, 828 (11th Cir. 2011) ("The exhaustion requirement is an affirmative defense, and a prisoner is not required to plead or demonstrate exhaustion in his complaint.") (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). If, however, defendants move to dismiss and put forward proof showing that Lofton failed to exhaust and defendants did not inhibit his efforts to do so, the PLRA obligates the Court to dismiss his claims. *See Turner v. Burnside*, 542 F.3d 1077, 1082 (11th Cir. 2008); *Harris*, 190 F.3d at 1285-86. If defendants wish to do so, they must file their motion within 30 days after the date this Order is served.

attributes to Williams -- "I run the show around here, y'all Muslims think you're smart -- let's see how smart you are when I put you over in my Tier II program." -- evidences both intent to discriminate and, at least implicitly, that Williams singled out Muslims for placement in the program. That's enough to pass muster at this stage.

Lofton also claims that Santiago strip-searched him and confiscated his property in part because he is a Muslim. *See, e.g.*, doc. 1 at 6. But he fails to allege differential treatment. Looking only at the Complaint, nothing suggests -- other than Lofton's conclusions -- that Santiago treated Muslim inmates any differently than those practicing other religions. Under Lofton's facts, it's just as likely that Santiago subjects *all* prisoners with religious materials in their possession to degrading strip searches.

Nevertheless "[t]he Eleventh Circuit has held that district courts should allow a *pro se* plaintiff an opportunity to amend [his] complaint "[w]here it appears that a more carefully drafted complaint might state a claim upon which relief can be granted." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002))." *Jackson v. St.*

*Lawrence*, 2011 WL 2535310 at * 5 (S.D. Ga. June 27, 2011) (allowing inmate leave to amend equal protection claim to include allegations of intentional discrimination). That's the case here. Lofton's equal protection claim against Santiago would survive if he included facts pointing to others similarly situated that Santiago treated differently from Lofton.[4] The Court in its discretion therefore will give Lofton a chance to amend his complaint. He must do so within 30 days of the date this Order is served.

### B. Cruel and Unusual Punishment - the Tier II Program

By now it is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials "must provide humane conditions of confinement[,] . . . must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (quotes omitted). Failure to do so constitutes cruel and unusual punishment. *Id.*

---

[4] The Court reminds Lofton that mere conclusions will not suffice. Put differently, he cannot simply state that Santiago doesn't subject Christians to the same treatment he suffered. He must provide *facts* that support such a conclusion.

Lofton contends that the Tier II program itself constituted such punishment. Doc. 1 at 8. Beyond that conclusion, however, he offers nothing of substance. He says that another prisoner in Tier II committed suicide "and another was killed within a matter of months!" *Id.* "[T]hus," he argues, "there is a recognizable threat to plaintiff's physical and mental health, and well-being." *Id.* Beyond that, Lofton offers no other program details.

Still, if given leave to amend, it's conceivable that Lofton could provide facts about the program that would support his claim. *See Bank*, 928 F.2d at 1112. As with his equal protection claim, then, Lofton has 30 days from the date this Order is served to amend his Complaint.

### C. Deprivation of Adequate Medical Care

To state an Eighth Amendment medical deprivation claim, a plaintiff must lay out facts supporting three elements. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing and explaining the constitutional cause of action for Eighth Amendment medical deprivation claims). "First, a plaintiff must set forth evidence [that he had] an objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Farmer*, 511 U.S. at 834. Second,

"a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* And third, as is true in all tort actions, the plaintiff must also establish that the defendant's indifference proximately caused his injury. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Lofton, in a bit of table flipping from his other claims, contends that placement in the Tier II program entitled him to "qualified clinical care," which the program allegedly lacks. Doc. 1 at 8. He was provided no "comprehensive treatment plan," or any "clinical care providers qualified to help with any sort of clinical, psychological, or psychiatric needs." *Id.*

Those allegations fall short of satisfying any of *Gamble*'s three elements. Lofton never claims to have any serious illness that required treatment. Quite the opposite, in fact; he contends Williams placed him in Tier II as punishment for being Muslim. Doc. 1 at 8. Even assuming he had some serious medical need, he offers nothing to suggest deliberate indifference on the part of any defendant, or any causation-related facts. *Goebert*, 510 F.3d at 1326. Since nothing suggests amendment would cure its deficiencies, his medical-deprivation claim fails.

### D. Violation of Bodily Privacy

Prisoners like Lofton also have a

> constitutional right to bodily privacy." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) (citing *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993)). Although the right is "very narrow," a person's "special sense of privacy in their genitals" animates that right where their genitals are involuntarily exposed to "people of the other sex." *Id.* at 1110–1111. Boxer X, for example, stated a claim under § 1983 by alleging that "Harris, a female prison guard, solicited [him] to masturbate for her viewing." *Id.* at 1111.

*Owens v. Prince*, 2015 WL 5168474 at * 3 (S.D. Ga. Sept. 2, 2015).

Lofton's claim that Officer Santiago forced him to strip naked, submit to a degrading search, and remain naked while Santiago rifled through his possessions does not, as currently pled, fall within the "very narrow" bounds *Boxer X* delineated. Santiago allegedly "berated, harassed, and humiliated" Lofton (doc. 1 at 6), and tried to provoke Lofton's resistance, but nowhere does he allege that Santiago was a member of the opposite sex or that the search -- however malicious it may have been -- contained the necessary sexual undertones. *See Boxer X*, 437 F.3d at 1111; *Harrison v. Carter*, 2013 WL 2443845 at * 3 (N.D. Ala. May 30, 2013) ("There is no specific right of privacy for prisoners with respect to their being forced to disrobe in front of members of the same sex."); *id.* (scope of the right to bodily privacy is heavily informed

11

by "the sexual component" of "the viewing of naked prisoners by members of the opposite sex").

As with his other claims, however, amendment could, if Santiago is in fact female, reveal a path forward for Lofton's bodily privacy claim. He therefore has 30 days from the date this Order is served to identify Santiago's gender.

E. **Unreasonable Search**

Beyond the more narrow right to bodily privacy, prisoners also retain a right to be free from unreasonable searches. *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979). "[P]risoner searches must be reasonable under the totality of the circumstances, 'weighing the degree to which the search intrudes on an individual's privacy against the degree to which it promotes a legitimate governmental interest.' *Padgett v. Donald*, 401 F.3d 1273, 1278-80 (11th Cir.2005)." *Brown v. Reynolds*, 2008 WL 1766778 at * 2 (N.D. Ga. Apr. 16, 2008). "An abusive strip search is not reasonable." *Id.* (citing *Bell*, 441 U.S. at 560).

Santiago searched Lofton upon his arrival at SSP. *See* doc. 1 at 6. Because "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence" in detention facilities, "visual body-cavity

inspections" may be "conducted on less than probable cause" in those circumstances. *Bell*, 441 U.S. at 560. Nevertheless, they still cannot be abusive. *Id.*

Lofton alleges that Santiago's strip searched him, not to find contraband, but to degrade and provoke him, including by making him stand naked while Santiago searched Lofton's property. Doc. 1 at 5. Even though Santiago had justification for initiating the search, that justification only extended so far, and certainly not so far as to encompass making Lofton stand naked after the body search ended. *Cf. Brown*, 2008 WL 1766778 at * 2 (on preliminary review, allegations that prison guard conducted strip search without justification sufficient to state a claim). Hence, his unreasonable search claim against Santiago survives preliminary review.

### F. Destruction of Property

When a state prison official intentionally destroys an inmate's personal property, a due process violation occurs if the state fails to make "available a meaningful postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 531 (1984). In *Hudson*, state law remedies adequately redressed the prisoner's alleged loss and so his § 1983 claim failed. *Id.* at

534. Prison grievance procedures also can obviate due process concerns. *Id.* at 536 n. 15.

Lofton's claim that Santiago (and possibly McIntyre) intentionally destroyed his religious materials for no reason fails on those grounds. *See* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."); *Romano v. Ga. Dep't of Corr.*, 303 Ga. App. 347, 351-52 (2010). The Georgia Tort Claims Act ("GTCA") provides another. *See Romano*, 303 Ga. App. at 352 ("[T]he GTCA . . . provide[s] Romano with an adequate postdeprivation remedy for his alleged loss of personal property."). Hence, Lofton's property destruction claims, regardless of which defendant they target, must fail.

## III. CONCLUSION

The Court greenlights plaintiff's equal protection claim against Warden Williams and unreasonable search claim against CERT Officer Santiago. Beyond that, Lofton also has leave to amend, within 30 days of the date this Order is served, the following: his (1) equal protection claim against Santiago; (2) Tier II cruel and unusual punishment claim; and (3) bodily privacy claim against Santiago. If he fails to amend within the

time allowed, the Court will direct service of the Complaint, as currently pled, on Williams and Santiago and recommend dismissal of the bodily privacy claim against Santiago.

Regardless of whether he amends, Lofton's medical deprivation and property destruction claims should be **DISMISSED** for the reasons given above. And, because the Complaint contains no allegations of any kind against Captain Bynum and Lisa Fountain,[5] and no allegations that state a claim against Tracy McIntyre,[6] they should be **DISMISSED** from this case. Finally, Lofton's motion for preliminary injunction (doc. 6) should also be **DENIED**.[7]

---

[5] Under Fed. R. Civ. P. 8(a)(2), complaints must contain "a short and plain statement of the" claim showing that the pleader is entitled to relief." The purpose of this rule is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Because Lofton provided no details regarding his claims against Bynum and Fountain, they should be dismissed.

[6] McIntyre allegedly took Lofton's property while at Macon State Prison after the Bloods/Muslims fight but before Lofton's transfer to SSP. Doc. 1 at 5. As with his claim against Santiago for property destruction, Lofton has an adequate remedy for McIntyre's alleged theft in the form of a tort claim under Georgia law. Because McIntyre played no part in any other claim, he should be dismissed.

[7] According to Lofton (a Muslim), SSP refuses to allow Muslim inmates in the Tier II program (which requires their segregation from the general prison population) to participate in the end-of-Ramadan Eid-al-Fitr feast. Doc. 6 at 2 (filed July 13, 2015). Lofton claims that prohibition violates RLUIPA's bar on laws that substantially burden the free exercise of religion without compelling justification. *Id.* Hence, he seeks an injunction allowing Tier II inmates to participate in the feast. *Id.*

Meanwhile, it is time for Lofton to pay his filing fee. His furnished PLRA paperwork reflects $24.63 in average monthly deposits and balance over the six month period prior to the date of his Prison Account Statement. Doc. 9. He therefore owes a $4.93 initial partial filing fee. *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) therefore remit the $4.93 initial partial filing fee and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, the Clerk is **DIRECTED** to send this R&R to plaintiff's account custodian immediately, as this payment directive is

---

Even though Ramadan and the Eid-al-Fitr feast have long since passed (Ramadan ran from mid-June 2015 to July 17, 2015), they recur every year and thus the injunction Lofton seeks will not "pass[] on to injunction heaven" so long as he remains in prison and in segregation. *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1229 (11th Cir. 2015); *id.* (disputes "capable of repetition, yet evading review" are not moot). Nevertheless, his motion should be denied because there's very little likelihood he would ultimately succeed in showing that the prison lacked justification for banning *segregated* inmates from feasting. *See GeorgiaCarry.Org v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (to obtain preliminary injunctive relief, the moving party "must show: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest").

nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this R&R.

**SO REPORTED AND RECOMMENDED**, this 11th day of January, 2016.

*/s/ G. R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA