# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

SCOURTERRIOUS LOFTON, )
)
   Plaintiff, )
)
v. )
) Case No. CV415-146
WARDEN STANLEY WILLIAMS; )
and CERT OFFICER SANTIAGO, )
)
   Defendants. )

## REPORT AND RECOMMNEDATION

After preliminary screening under 28 U.S.C. § 1915A and a Complaint amendment by Scourterrious Lofton (doc. 9), the Court recommended that four claims proceed.[1] Docs. 7, 10. The district judge agreed (doc. 13), and defendants then moved to dismiss (doc. 18) and to stay discovery pending resolution of that motion. Doc. 19.

## I. BACKGROUND

From the Court's § 1915A recommendation:[2]

---

[1] Those are: a religious discrimination (equal protection) claim against Warden Williams, and equal protection, bodily privacy, and unreasonable search claims against Officer Santiago. Doc. 7 at 14; doc. 10 at 3.

[2] At the motion to dismiss stage, as on preliminary review, the Court accepts as true the allegations in Owens' Complaint. *See Smith v. Owens*, 625 F. App'x 924, 926

"On Nov[ember] 16, 2014, an altercation occurred . . . at Macon State Prison [MSP] between a group of Bloods (known gang members) and Muslims." Doc. 1 at 5. Lofton abstained from fisticuffs, but two of his "Muslim brothers ran into [his] cell" to escape the melee. *Id.* During a post-fight "round-up," prison guards detained him because they found the two inmates in his cell without authorization and because he "was a known Muslim." *Id.*

After the round-up, "CERT officers -- under orders from [defendant] Tracy McIntryre . . . -- made [Lofton] submit to a strip search," and transported him to a new dorm. Doc. 1 at 5. McIntyre took Lofton's property to search it, but failed to return it until his transfer to SSP [Smith State Prison]. *Id.* By that point, "a lot of [his] personal property was missing, particularly [his] electronic items." *Id.*

During the transfer, Lofton "was served with a 'disciplinary report" for "participating in a disturbance," and "allowing two other inmates to seek safety in [his] assigned cell." Doc. 1 at 6. He later complained to an investigator at SSP, who "agreed [with Lofton] and recommended dismissal" of the report. *Id.* at 6. "[A]nother document was [then] forged to correct the discrepancy," *id.* at 7, and ensure Lofton remained a "disciplinary transfer classification." *Id.* at 6.

Upon arrival at SSP, "CERT officers, particularly [defendant] Santiago," "berated, and harassed, and humiliated" Lofton. Doc. 1 at 5. Allegedly because of his disciplinary classification and "the presence of Islamic materials (prayer rug, books, Quran, etc.)," Santiago "forced [him] to submit to a malicious and degrading strip search attempting to provoke [him] in order to give [prison staff] a 'reason' to use force on [him]." *Id.* at 6. Santiago made Lofton "stand naked for a prolonged period of time," during which he ransacked Lofton's property. *Id.* He randomly broke personal, non-

---

(11th Cir. 2015) (on § 1915A review, courts "view the complaint in the light most favorable to the plaintiff, accepting all of the plaintiff's well-pleaded facts as true") (citing *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1056–57 (11th Cir. 2007)).

contraband items in an attempt to provoke Lofton, and when Lofton complained, Santiago confiscated everything. *Id.* Lofton later filed a grievance "but was not afforded any relief." *Id.*

He also complained to defendant Stanley Williams, SSP's warden, about his disciplinary report and mistreatment by the CERT team officers. Doc. 1 at 7. In response, Williams told Lofton "I run the show around here, y'all Muslims think you're smart -- let's see how smart you are when I put you over in my Tier II program." Doc. 1 at 7. That program, he says, is "designed for clinical and psychological need[s]," not for those guilty of practicing Islam. *Id.* What's more, says Lofton, the program lacks any certified medical professionals and exists solely to "goose" occupancy numbers and justify the prison's continued receipt of program funding. *Id.* at 8. Lofton remains there today, in his view "based upon his religious affiliation," and without "a means of completing the program." *Id.* He claims that, prior to filing this lawsuit, "[a]ll administrative remedies have been exhausted." *Id.* at 7.

*Lofton v. Williams*, 2016 WL 126408 at * 1 (S.D. Ga. Jan. 11, 2016).

In their motion to dismiss, defendants argue the opposite -- that Lofton in fact failed to exhaust available remedies. Doc. 18-1 at 3. They also contend that (1) his post-Complaint transfer to another prison moots his request for injunctive relief (*id.* at 9); (2) the Eleventh Amendment bars recovery of damages from defendants in their official capacities (*id.* at 10); and (3) he fails to state a claim for compensatory or punitive damages. *Id.* at 13.

3

## III. ANALYSIS

### A. Exhaustion

Defendants first argue that Lofton failed to properly exhaust available administrative remedies. Citing to his grievance record and the two grievances Lofton attached to his Complaint, they contend that, despite filing "nine grievances since his transfer to SSP," he never grieved "any of the issues forming the basis of the claims in this . . . action." Doc. 18-1 at 5. That, says defendants, is not the proper exhaustion that § 1997e(a) requires.

In response, Lofton points to his attached grievances and concludes "that all administrative remedies were exhausted." Doc. 21. Elaborating, he notes that disciplinary hearings or administrative segregation assignments are non-grievable (true, *see* doc. 18-3 at 23) and concludes that "even though [he] addressed the grievance complaint there is no cognizable recourse for such administrative relief." *Id.* at 2. Lofton in effect argues that his claims involve non-grievable issues, and thus the grievances he actually submitted suffice for § 1997e(a)'s purposes.

Under that provision, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available[3] are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285–

---

[3] *See also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016) (§ 1997e(a)'s "edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner").

> An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. As we explained in *Booth* [*v. Churner*], the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' 532 U.S., at 737–738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.

*Id.* at 1858-59.

"[T]hree kinds of circumstances [exist] in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. "First," a procedure "is unavailable when . . . it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.*; *see also Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). And finally, grievance processes need not be exhausted "when prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

5

86 (11th Cir.1999), *vacated on other grounds by Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) (en banc) (footnote added); *see also Jones v. Bock*, 549 U.S. 199, 199–200 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").[4]

PLRA exhaustion also must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89–91 (citation omitted). If an inmate files an "untimely or otherwise procedurally defective administrative grievance or appeal," he therefore has not properly

---

[4] Exhaustion furthers seven policy aims:

(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998) (quotes omitted); *see also Woodford*, 545 U.S. at 89; *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (PLRA's primary concerns are "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court").

exhausted his administrative remedies. *Id.* at 83–84; *see also Lambert v. United States*, 198 F. App'x. 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005).

Exhaustion, however, is an affirmative defense and "defendants bear the burden of proving that the plaintiff has failed to exhaust." *Turner*, 541 F.3d at 1082 (quoting *Jones*, 549 U.S. at 216). "[T]reated as a matter in abatement," exhaustion defenses are "like a defense for lack of jurisdiction." *Id.* Deciding them thus involves a "two-step process." *Id.*

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
> * * *
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether

under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (cites omitted); *see also Bryant v. Rich*, 530 F.3d 1368, 1376-77 (11th Cir. 2008) ("[W]here a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.").

Even taking Lofton's allegations as true,[5] he still failed to exhaust available administrative remedies. Again, Lofton presses religious discrimination, unreasonable search, and bodily privacy claims. *See supra* n. 1. None of those involve a disciplinary proceeding. Even if they did, and though his discrimination claim against Williams surrounds his transfer to the Tier II program (possibly a non-grievable issue), a remedy's futility does not excuse a failure to exhaust. *See Alexander*, 159 F.3d at 1326 ("Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are futile or inadequate."); *Ates v. Terry*, 2012 WL 3096065 at * 2 (M.D. Ga.

---

[5] Recall that *Turner* step one instructs courts to do just that. *See Turner*, 541 F.3d at 1082.

8

June 29, 2012) (non-grievability of issue cannot excuse a failure to exhaust) (citing *Alexander*).

Lofton simply never grieved any of the issues that he plies here. He complained about the process provided in a disciplinary hearing (doc. 1 at 11), and sought the return of property lost during his transfer from MSP to SSP (*id.*; doc. 1-1 at 2), but never mentioned religious discrimination (or religion at all, for that matter) or any illegal search, much less a degrading strip search.[6] Lofton failed to do so despite intimate familiarity with the system (he's filed *92* grievances during his incarceration, doc. 18-2 at 3), and its clear availability (he filed nine grievances after his transfer to SSP, two of which he pursued all the through the appeals process, *id.* at 4-5) at the time of the events underlying his Complaint. He thus failed to exhaust and § 1997e(a) thus requires dismissal.

A failure to exhaust typically justifies dismissal *without* prejudice. *See Howard v. Kraus*, 2016 WL 471387 at * 2 (11th Cir. Feb. 8, 2016) ("[D]ismissal for failure to exhaust administrative remedies is not an

---

[6] Indeed, Officer Santiago's only mention in either of the grievances Lofton attached to his Complaint -- the grievances he claims prove he exhausted administrative remedies -- comes when Lofton says Santiago gave him a property disposal form. Doc. 1-1 at 2.

9

adjudication on the merits. . . ."); *Prickett v. Lawson*, 2008 WL 5046063 at * 3 (S.D. Ga. Nov. 24, 2008) ("Normally, the failure to exhaust warrants dismissal without prejudice."). That's true here. If Lofton wishes to refile (*without* prejudice means he can do that) before the two year statute of limitations expires,[7] he must first attempt to grieve defendants' alleged unconstitutional actions (the untimeliness of his grievances does not erase the need to grieve, *see Alexander*, 159 F.3d at 1326).

---

[7] "Federal courts look to state law to determine the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir.1996). In Georgia, the applicable statute of limitations for personal injury actions is two years. O.C.G.A. § 9–3–33." *Hammonds v. Mark Shellnut, LLC*, 399 F. App'x 540, 540 (11th Cir. 2010). Lofton complains about events that occurred in November 2014. *See* doc. 1 at 5. He therefore has until November 2016 before the time to file suit expires. As noted above, however, he must first exhaust available administrative remedies before knocking on this Court's door again.

The current procedure gives SSP forty days to respond to grievances (fifty with a one-time ten day extension). Doc. 18-3 at 10. Lofton then would have seven days to file an appeal of any adverse decision, which the Commissioner of the Department of Corrections has 100 days to decide. *Id.* at 11-12. Assuming an initial grievance is denied, Lofton appeals, and the prison uses all available decision time, the grievance process may not be completed until after the statute of limitations expires (157 days well exceeds the 90 or so days until Lofton runs out of time to file suit). That limitations period, however, may toll during a prisoner's attempt to exhaust his available remedies. *See Watkins v. Haynes*, 2013 WL 1289312 at * 8 (S.D. Ga. Mar. 27, 2013) ("Applying the rationale from [relevant Georgia] cases . . . this Court holds that the statute of limitations was tolled while Plaintiff complied with the PLRA by pursuing possible administrative remedies prior to filing suit."). At this juncture, tolling's application here is speculative and thus not an issue the Court need decide.

Two of defendants' remaining arguments, though not necessary to deciding this case, require a few words should Lofton indeed refile. First, he cannot recover monetary damages from state officials sued in their official capacities (*i.e.*, if he sues the Warden *qua* Warden instead of the Warden as an individual, he cannot recover money). *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against . . . State officials . . . sued . . . in their official capacity."). He may sue Williams and Santiago, but only in their individual capacities, and not in their capacities as officers of the state.

Second, he may not recover anything more than nominal damages for "mental or emotional injury suffered while in custody" unless he can show "physical injury" as well. 42 U.S.C. § 1997e(e); *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015) ("Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than *de minimis*) physical injury."). His current Complaint makes no such allegation. Nevertheless, even absent physical injury, aggrieved prisoners may recover nominal damages (which can, in certain

circumstances, support an award of attorney's fees should Lofton ever obtain counsel).[8] *Brooks*, 800 F.3d at 1307-08 ("[W]e hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.").[9] That, in turn, will support his recovery of costs under Fed. R. Civ. P. 54(d)(1), which includes any filing fees that he has paid.

## IV. CONCLUSION

Because Scourterrious Lofton failed to exhaust available administrative remedies, his Complaint should be **DISMISSED WITHOUT PREJUDICE**. Given that recommendation, defendants' motion to stay is **GRANTED**. Doc. 19.

---

[8] *See Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1040 (11th Cir. 2010) ("Only the 'prevailing party' is eligible for attorney's fees under 42 U.S.C. § 1988, and a plaintiff prevails 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). A 'plaintiff who wins nominal damages is a prevailing party under § 1988.' *Id.* at 112, 113 S.Ct. at 573.").

[9] Defendants also argue that his May 19, 2016 transfer to general population mooted Lofton's request for injunctive relief. Doc. 18-1 at 10 (citing doc. 18-2 at 6). Because this case must be dismissed for failure to exhaust, the Court need not decide that issue.

**SO REPORTED AND RECOMMENDED**, this __3rd__ day of August, 2016.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA